**Tom LEWIS et al., Appellants,**

v.

**Orien Henry PARISH, Appellee.**

**No. 6417.**

Court of Civil Appeals of Texas.

Amarillo.

June 21, 1954.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo (Jerome W. Johnson, Amarillo, of counsel), for appellants.

Aldridge & Aldridge, Farwell, for appellee.

NORTHCUTT, Justice.

This is an appeal from a judgment of the District Court of Lamb County, Texas, overruling the defendants' plea of privilege and refusing to transfer the cause of action to Castro County, Texas. Defendants in the trial court are appellants here. The collision in question happened in Lamb County, Texas. Appellants reside in Castro County and filed their plea of privilege ask-

ing that this case be transferred to Castro County. Appellee filed his controverting affidavit contending that venue was proper in Lamb County under Subdivision 9 of Article 1995, Vernon's Annotated Civil Statutes.

It is such a well-established rule in this state that a person's right to be sued in the county of his residence is a valuable right and should never be abridged except by clear pleading and proof that the cause of action comes under one of the exceptions as provided in Article 1995 that no authority is required to sustain this proposition.

This plea of privilege was presented to the court without a jury. The court overruled the plea of privilege and did not file any findings of fact or conclusions of law. Under this state of the record, if there are any grounds to support it every issue in the case must be resolved in support of the judgment of the trial court.

The filing of the plea of privilege by defendants constitutes prima facie proof for a change of venue. The plaintiff's controverting plea constitutes the pleading upon which the venue issue rests. In appellee's controverting plea he makes his original petition a part of such plea by reference. Appellee alleges in his original petition the following acts of negligence on the part of the appellants:

"(a) That they were operating said motor vehicle at a fast and dangerous rate of speed.

"(b) That they were operating said motor vehicle at a rate of speed greater than 55 miles an hour.

"(c) That they failed to keep a proper lookout.

"(d) That they entered the intersection after this Plaintiff was in said intersection.

"(e) That they failed to have proper brakes on said motor vehicle.

"(f) That they failed to yield the right-of-way.

"(g) That they were driving at a fast and dangerous rate of speed under the circumstances.

"(h) That they failed to apply the brakes.

"(i) That they failed to turn to the left.

"(j) That they failed to stop their motor vehicle.

"(k) That they failed to turn to the right.

"(l) That they failed to keep their motor vehicle under control."

Article 1995 as referred to in appellee's controverting plea provides the three things appellee must do to retain this action in Lamb County as follows:

"Negligence.—A suit based upon negligence per se, negligence at common law or any form of negligence, active or passive, may be brought in the county where the act or omission of negligence occurred or in the county where the defendant has his domicile. The venue facts necessary for plaintiff to establish by the preponderance of the evidence to sustain venue in a county other than the county of defendant's residence are:

"1. That an act or omission of negligence occurred in the county where suit was filed.

"2. That such act or omission was that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment.

"3. That such negligence was a proximate cause of plaintiff's injuries."

Although appellee has alleged some twelve acts of negligence in his petition, the only one that seems to be urged here as grounds for overruling the plea of privilege is that the automobile was being operated at a fast and dangerous rate of speed under the

circumstances. The appellee testified that on Sunday morning, January 18, 1953, he was on his way to the farm of Homer Hodges; that just as he reached the Hodges' farm appellee was driving north and that the Hodges' farm was on his left or west from the road appellee was travelling upon; that just before he reached the place to turn off to the Hodges' farm he drove up behind another vehicle and that he slowed down and looked around said vehicle and that he could see up the road for about a quarter of a mile and there was no car coming; that after looking he executed a left turn at about ten miles per hour to go up to the Hodges' home; that before he crossed the left lane of the highway the pickup he was driving was hit on the right side just back of the front fender of the Lewis car. Appellee stated he never at any time saw the Lewis car before the collision. At the time of the collision he was knocked unconscious and did not know anything for several days. Besides the appellee, L. H. Randolph, a deputy sheriff, was the only witness to testify. Mr. Randolph did not see the accident and was the only witness to give any estimate as to the speed of the Lewis car and his estimate of the speed of the Lewis car at the time of the collision was based upon his observance of the skid marks on the pavement. In giving this testimony, Mr. Randolph stated in making an estimate from the skid marks as to the speed a car would be going that that would depend upon the condition of all four brakes; that if all four brakes grabbed equally it would skid a lot less feet than if two of them grabbed. There is no evidence in this record whether the Lewis car had four wheel brakes or as to the condition of the brakes of the Lewis car. There is just no evidence along this line. Mr. Randolph could not say whether one or more or all four of the wheels skidded. He did not know whether there was one mark or two marks shown from the skidding. Consequently, under this record he had nothing to base his testimony upon of sufficient force to be relied upon herein.

Appellee testified that he was travelling about ten miles per hour while making his turn to the left. The testimony does not give the exact width of the pavement but states that it is a regular Farm-to-Market road. Appellee was travelling north and was on the east side of the road before making his turn and was on the west side of the road when he was hit. The appellants were going south at the time of the collision. Their proper lane of traffic while going south would be in the west lane where the accident occurred. The estimates given by appellee are so unreasonable that no credit can be given to such testimony. If appellee were travelling 10 miles per hour while making his turn he was travelling 14⅔ feet per second and at that rate in two seconds he would have been off the paved part of the regular Farm-to-Market road. If this all be true, for the appellants to have travelled a quarter of a mile in the two seconds they would have been travelling at the rate of 450 miles per hour. There is nothing in this record to even suggest that appellants had any reason to think or foresee that appellee would turn or drive into their lane of traffic. This accident did not happen at a cross-road intersection. Nothing in the record to show any notice was given appellants that appellee was going to turn from his lane of traffic and cross appellants' lane of traffic. The testimony was based partially on hearsay, unsupported opinions, and conclusions of witnesses not shown to be qualified. Gunstream v. Oil Well Remedial Service, Tex.Civ.App., 233 S.W.2d 897.

We are of the opinion that the testimony offered by the appellee is insufficient to establish the act or omission of negligence as required under Article 1995 above mentioned and sustain appellants' second, fourth, and sixth points of error. Judgment of the trial court reversed and judgment here rendered sustaining appellants' plea of privilege and transferring the cause to the District Court of Castro County.

Reversed and rendered.